### 24435. SMITH *v.* THE STATE.

DECIDED APRIL 8, 1935.

*R. Douglas Feagin, J. E. Feagin,* for plaintiff in error.
*C. S. Baldwin Jr., solicitor-general,* contra.

GUERRY, J. The defendant, Julius Smith alias Prince Hal, was jointly indicted in the superior court of Baldwin county with Mark Hays and Wash Ford for the offense of larceny from the house. Julius Smith was tried separately and was convicted. From the evidence it appears that Romiah Dawson, a negro 85 years old, lived upstairs in a house with Will Smith and his wife, who lived in the down-stairs part. The entrance to his room was not through the part of the house occupied by Will Smith and his

wife, but opened on the street. Romiah Dawson had accumulated through the years $600 in silver dollars and had it in a sack which he kept under the cover at the foot of his bed. He looked at it several times a day, "every time he turned around." About the 12th of April the defendant, who was prior to that time unknown to Romiah Dawson, came to his house and met him outside the door, and the following conversation occurred between them: "'How you, old man?' I told him, 'I feel very well. How you do?' He said, 'I am well.' I am sure that is the man. He said, 'You a conjurer or not?' I said, 'No, I am not no conjurer and I don't want any conjuring man around here.' He said, 'I can show you mighty quick how to be it.' He reached his hand back in here and pulled out a glass ball, like that, and said, 'See that ball. I hypnotize you and get you asleep and take everything you got.' Said, 'You got a fist of money and I know it.' I said, 'How do you know what I have got?' He said, 'I know you got it and I am going to take it.' He said, 'There has been people trying to get it and couldn't get it, but I am going to take it.'" The other two defendants came up during this conversation and the defendant told them he had been looking for them all day. When they left, the defendant said to the old darkey: "Old man, I am coming back to see you again." Romiah Dawson replied: "I don't want any of your company;" and the defendant replied: "I am coming to tell your fortune when I come; you got a fist full of money and I am going to take it away from you." The prosecutor further testified that all of them came back about dark on the same day, but that he did not see any of them except the defendant, who was out in the yard talking to Fanny Smith. Will Smith was not at home. The money was on the bed at that time. The prosecutor went out of the house into the back yard to the toilet and left the door open. He sat on the steps when he came back until time to go to bed, and when he started to bed he missed the money. "I said, Prince Hal and old Mark Hays and Wash Ford got my money." A warrant was not sworn out until some days later. Wash Ford and Mose Hays have not been seen since that night and the sheriff has been unable to locate them. The defendant told another witness with whom he stayed in Milledgeville that "Mark and them were going to get the old man's money." He did not say to whom he referred by "them." The evidence fur-

ther showed that the defendant came back to Milledgeville some days afterwards, and a white man who came with him came to Dawson and told him he had heard that he had lost some money and he wanted to make it up for him, and offered him $30. When the defendant heard that a warrant was out for him he left and went back to Macon where he was arrested some days later. There is no testimony showing any connection on the part of the defendant with any sum of money, silver or otherwise. There is no evidence that the defendant ever went into the room of the prosecutor where the money was. There was, from the State's own testimony, at least an equal opportunity for the woman to have gotten the money. We recognize that with our colored brethren, conjuring sometimes plays a conspicuous part in their lives, that "Prince Hal" and the "Crystal ball" are not unlike "Prince Ali Bendo" and his ball, of Amos 'n' Andy fame. We confess that the evidence is sufficient to raise rather a violent suspicion that Prince Hal had some connection with the disappearance of this money from this old and deserving darkey. We do not believe, however, that the evidence is sufficient to exclude every other reasonable hypothesis than that this money was stolen by the defendant; and, entertaining such a view, we hold that the verdict was not supported by the evidence and that the court erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*